IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

CHERYL BRATCHER and
AMOS BRATCHER,

                Plaintiffs,

v.                                        CIVIL ACTION NO. 5:10-cv-01100

EDWARD F. DOLPHIN and
JAMES CHELLIS,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Plaintiff's Motion for Attorney's Fees and Expenses of Litigation* ("Pl.'s Mot.") (Document 118)[1], the memoranda in support (Document 119) and in opposition (Documents 120-121), as well as the reply (Document 126). For the reasons set forth below, the Court finds that Plaintiff's motion should be **granted in part**.

The Court observes that nearly one month after Plaintiff filed her reply, Defendants filed, without seeking Court approval, the Sur-Response to Plaintiffs' [sic] Reply to the Defendants' Response Opposing the Plaintiff's Request for Attorney's fees and Costs (Document 129). Immediately thereafter, Plaintiff filed an objection to the untimely, unapproved "Sur-Response" and requested that the Court disregard the filing. (*See* "Plaintiff's Objection to the Defendants' Sur Response to Plaintiff's Reply, Docket Entry 129 Filed 6/7/12 and the Defendants' Joint Reply, Docket Entry 128 Filed 6/6/12, and Motion for the Court Not to Consider the Same"

---

[1] Although this case has two plaintiffs, the movant here is Plaintiff Cheryl Bratcher (*see* Pl.'s Mot. at 1-2; Pl.'s Mem. at 8). Consequently, the Court will denote the party designation in the body of the opinion in the singular.

("Pls.' Obj.") (Document 130)).[2] In response, Defendants candidly admitted that their Sur-Response was filed four weeks after Plaintiff's Reply, asserted that the filing was "necessary to address certain issued [sic] raised by Plaintiffs' [sic] in their Reply that may tend to mislead this Court, due to the factual inaccuracies and misstatement of the law contained therein," and explained that the submission was untimely due to the "complex" issues presented relative to an award of attorney fees and counsel's need to prepare for the trial in a different case. (Defendants' Joint Response to Amended Plaintiff's Objection to the Defendants' Sur Response, Docket Entry 129 and Defendants' Joint Motion to Modify Time Period to the Reply (Document 133) at 1-2). Defendants moved the Court to "modify the time allowed to serve" the Sur-Response. In consideration of Defendants' motion (Document 133) and Plaintiff's objections, the Court **denies** Defendants' request finding a failure to establish good cause or excusable neglect for the untimely filing.

I.

On September 14, 2010, Plaintiff Cheryl Bratcher and her husband, Amos Bratcher, initiated this civil action against Defendant Edward F. Dolphin, Sheriff of Summers County, West Virginia, and Defendant James Chellis, Chief Deputy in the Summers County Sheriff's Department. Cheryl Bratcher alleged the following claims: sexual harassment (hostile work environment), gender discrimination (relative to equality of pay), supervisory liability against Defendant Dolphin for the civil rights violations, battery, intentional infliction of emotional distress (IIED), and violation of First Amendment Freedom of Association right. (Complaint (Document 1) ¶¶ 20-25). Amos Bratcher asserted a loss of consortium claim. (Compl. ¶¶ 26-27).

---

[2] One day later, Plaintiff amended the objection to account for an erroneously stated date therein. (*See* "Amended Plaintiff's Objection to the Defendants' Sur Response to Plaintiff's Reply, Docket Entry 129 Filed 6/7/12 and the Defendants' Joint Reply, Docket Entry 128 Filed 6/6/12, and Motion for the Court Not to Consider the Same" ("Pls.' Am. Obj.") (Document 131)).

Although, the Bratchers did not seek a sum certain in their complaint, they asserted a claim for compensatory damages, punitive damages, attorney's fees pursuant to 42 U.S.C. § 1988, and an injunction to enjoin Defendants from further misconduct. (Compl. at 10-11). On April 11, 2012, following the conclusion of a six-day trial, the jury returned a verdict in favor of Plaintiff Cheryl Bratcher against: (1) Dolphin for her claim of supervisory liability for creating an abusive or hostile work environment and (2) Chellis for her claims of hostile and abusive work environment and battery.[3] (Jury Verdict (Document 111)). The jury awarded Cheryl Bratcher $500 in compensatory damages and $12,500 in punitive damages ($10,000 as to Chellis with the balance against Dolphin). (*Id.*) Thereafter, counsel for Plaintiff moved orally for an award of attorney's fees. The Court directed the parties to file written arguments relative to the motion.

*II.*

In her opening motion, Plaintiff Cheryl Bratcher seeks an award of $56,312.50 in attorney's fees and $5,979.99 in litigation expenses for the "successful vindication of [her] constitutional rights . . . [as] provided for in 42 U.S.C. [§] 1988." (Pl.'s Mot. at 1.) In support of this request, Plaintiff asserts: that she is a prevailing party under Section 1988, having received a compensatory and punitive damages award against each defendant for substantially prevailing on her claims; that counsel worked 225.25 hours at a reasonable rate of $250 per hour; that the fee request is consistent with the "lodestar" fee factors and is comparable to similar Section 1988 awards in this state; and that the "requested fee would be sufficient to achieve the desired results, and will encourage, not discourage, counsel and others like him to file such cases to vindicate the constitutional rights of clients." (Plaintiff's Memorandum of Law in Support of 42 U.S.C. [§]

---

[3] The jury did not find Defendants liable for Amos Bratcher's loss of consortium claim or Cheryl Bratcher's claims for equal pay, intentional infliction of emotional distress ("IIED"), and harassment for associating with Deputy John Farmer.

3

1988 Motion ("Pl.'s Mem.") (Document 119) at 6). Plaintiff also reserved the right to seek attorney's fees for time expended defending any post-trial motions asserted by Defendants. (*Id.* at 8.) Counsel for Plaintiff attached to the motion: (1) an affidavit explaining the requested fee award relative to the "lodestar" fee factors (Pl.'s Mem. Ex. Affidavit of Anthony R. Veneri, Esq. ("Veneri Aff.") (Document 119-1) at 1-9), (2) itemized charts denoting activity, time expended, and hourly rate for his services and expenses (Pl.'s Mem. Ex. A-B, Chart of Fees and Costs ("Fee Chart") (Document 119-1) at 10-13) and (3) the Bratchers' Fee Agreement with Counsel (Pl.'s Mem. Ex. C, Contract of Employment ("Fee Agreement") (Document 119-1) at 14-15).

In opposition, Defendants assert that Plaintiff's requested fee award should be reduced based on the "relatedness of the unsuccessful claims to the successful claims." (Memorandum of Law in Opposition to Plaintiffs' [sic] Motion for Attorney's Fees and Expenses of Litigation ("Defs.' Opp'n") (Document 121) at 3-4). In this vein, Defendants argue that Plaintiff's asserted deprivation of First Amendment Freedoms and the gender discrimination claims were both based on facts and legal theories that are not common to the sexual harassment claims and that Plaintiff's unsuccessful claim of sexual harassment against Defendant Dolphin involved facts that were different from her claims of sexual harassment against Defendant Chellis. (*Id.* at 4.) Defendants also argue that the fee award should be reduced by the "work related to [the] state law claims . . . unless they are related to the successful claims." (*Id.* at 5.) In support of this argument, Defendants contend that four of the nine claims asserted by Plaintiff were state law claims, Plaintiff succeeded only as to one such claim, and the facts, evidence and legal theories relative to the loss of consortium, battery and IIED claims are not related to the civil rights claims. (*Id.* at 6.) Defendants also seek a reduction based on the Court's consideration of the parties' settlement offers versus the jury award. (*Id.* at 7.) Finally, relative to the lodestar

factors, Defendants do not dispute Plaintiff's counsel's hourly rate, his "experience, reputation and ability as an attorney" and the time entries he provided generally (*see* argument above relative to the successful versus unsuccessful claims). However, they assert that a reduction is warranted based on the remainder of the factors. (*Id.* at 8-15.)

In response, Plaintiff defends the jury verdict she received by asserting that a "conservative jury" possibly awarded a "low sum of compensatory damages" because of the small amount of medical expenditures in the case ($91.00), but that it wanted to punish the bad acts of the Defendants as reflected in the punitive damages award ($12,500). (Plaintiffs' [sic] Reply to the Defendants' Response Opposing the Plaintiff's Request for Attorney's Fees and Costs ("Pl.'s Reply") (Document 126) at 2, 8). Further, Plaintiff contends that her claims arose out of a "core set of facts" and that she prevailed "on the four most important claims . . . asserted." (*Id.* at 3). Relative to the IIED claim, Plaintiff argues that the same evidence would have been presented in this case "irrespective of whether a claim of outrageous conduct had been alleged." (*Id.* at 4.) Plaintiff also contends that the Court should reject Defendants' argument relative to her failure to accept its settlement offer because they violated the rules of confidentiality of settlement negotiations. (*Id.* at 5-6.) Plaintiff further argues that the Defendants' final offer was insufficient to cover the costs of attorney's fees and expenses incurred for the work performed through the time of mediation. Contrary to Defendants' argument that Plaintiff would have been more successful if she settled, Plaintiff asserts that if the Defendants had accepted her demand, they would have been better off in light of the jury verdict, the requested fee award, and the fees and costs incurred by its own attorneys. (*Id.* at 7.) Finally, Plaintiff argues that the fee request should not be reduced as it may have a chilling effect on attorneys litigating claims like those in this case. (*Id.* at 8.)

5

As a result of his response to Defendants' opposition, counsel for Plaintiff asserts he performed an additional six hours of time and that this service should be included in his award. (Pl.'s Reply. at 9.)  Additionally, the record reveals that counsel also requests that the fee award include the eleven hours spent in responding to Defendants' post-trial motions.  (*See* Plaintiff's Memorandum of Law in Opposition to the Defendants' Post trial Motions (Document 127) at 10.)[4]  In each instance, counsel applied his hourly rate of $250.00.

Therefore, in aggregate, Plaintiff is requesting an award of $5,979.99 in litigation expenses and attorney fees for 242.25 hours, at an hourly rate of $250, or $60,562.50.

### III.

Section 1988 of Title 42 of the United States Code, or the Civil Rights Attorney's Fee Awards Act of 1976, constitutes "an exception to the American Rule that each party, regardless of who prevails, must pay its own attorney's fees." *Johnson v. City of Aiken*, 278 F.3d 333, 336 n.6 (4th Cir. 2002) (citing B*uckhannon Bd. & Care Home, Inc., v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).  Instead, Section 1988 allows the "prevailing party" in Section 1983 cases, and other civil rights actions, to recover a "reasonable attorney's fee." Specifically, the statute provides in relevant part: "[i]n any action or proceeding to enforce a provision of sections . . . 1983 [and] 1985 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"  42 U.S.C. § 1988.  The Supreme Court has determined that a plaintiff "prevails" in such cases "when actual relief on the merits of [her] claim materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, --- U.S. ---, 133 S.Ct. 9, 11 (2012) (quoting *Farrar v. Hobby*,

---

[4]  The Court observes that counsel did not attach an affidavit of the same as he represented therein.

6

506 U.S. 103, 111-12 (1992)). Further, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. Section 1988's aim is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys.'" *Perdue v. Kenny A.*, 559 U.S. 542, 130 S.Ct. 1662, 1672 -73 (2010) (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

The Supreme Court has instructed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A district court's assessment of the requested award should include consideration of hours which were spent excessively, redundantly or unnecessarily. (*Id*. at 434.) Additionally, a court is charged with measuring the prevailing party's success, a particularly important task in a case like this one, where a plaintiff has been successful only as to some of the claims for relief. The Supreme Court has instructed that in such a case, two questions must be answered: "[f]irst, did the plaintiff fail to prevail on claims that were unrelated to the claims on which [s]he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" (*Hensley*, 461 U.S. at 434.) In view of the first inquiry, the *Hensley* Court explained that some cases against the same defendants may involve "different claims for relief that are based on different facts and legal theories" and that in that case "counsel's work on one claim will be unrelated to his work on another claim." (*Id*. at 434-35.) In such a case, the hours expended on the unsuccessful claims "cannot be deemed to have been 'expended in pursuit of the ultimate result achieved'" which requires a court to limit the requested award by "treat[ing] [the unrelated claim] as if [it] had been raised in separate

lawsuits." (*Id*. at 435.) On the other hand, there are cases where a "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." (*Id*.) In these cases, the attorney's time is spent "generally to the litigation as a whole" which obviously "make[s] it difficult to divide the hours expended on a claim-by-claim basis." (*Id*.) In cases of this nature, the "district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." (*Id*.) Indeed, in cases where a plaintiff has "achieved only partial or limited success" a district court may find that the fee award request for the litigation as a whole is excessive, even if the "claims were interrelated, nonfrivolous, and raised in good faith." (*Id*. at 436) The court is charged with utilizing its discretion since "[t]here is no precise rule or formula" to make a fee determination. In application of this discretion, a district court may identify specific hours for elimination or just simply reduce the award to account for the "limited success." (*Id*. at 436-37.)

The Fourth Circuit Court of Appeals has also provided guidance on the calculation of a reasonable attorney's fee, including the determination of the initial lodestar amount. In *Grissom v. The Mills Corp*., the Circuit Court instructed that a district court should first calculate the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended) upon consideration of the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (citing *Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987); *see Hensley v. Eckerhart*, 461 U.S. at 430, n. 3; Jackson v. Estelle's Place, LLC, 391 F. App'x 239, 243 (4th Cir. 2010); *Trimper v. City of Norfolk*, 58 F.3d 68, 73-74 (4th Cir. 1995) (applying twelve factors in Section 1988 fee award case); *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978). Upon completion of this calculation, a "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Grissom*, 549 F.3d at 321 (quoting *Johnson*, 278 F.3d at 337). "Once the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." (*Johnson*, 278 F.3d at 337).

*IV*.

The Court has reviewed the parties' written submissions and has considered the asserted claims, the evidence presented at trial, the requested fee award, and the jury's verdict. The jury favorably found that Plaintiff Cheryl Bratcher was subjected to work within a hostile or abusive environment charged with sexual commentary and acts – an environment to which her supervisor was deliberately indifferent or tacitly authorized. Plaintiff successfully altered the relationship between the parties by achieving success on her asserted claims of civil rights violations. Therefore, the Court finds that Plaintiff is a prevailing party and is, therefore, entitled to an award of a reasonable attorney fee, pursuant to Section 1988. Indeed, Defendants do not dispute that Plaintiff is a "prevailing party" as that claim is used in the applicable statute.

With the foregoing legal principles in mind, the Court will first determine the lodestar amount relevant to this case. Plaintiff seeks fees for the work performed by only one attorney, Mr. Venari, at a rate of $250.00 per hour. Defendants do not dispute this rate or challenge

9

Plaintiff's counsel's experience or skill to bill at this rate nor do they challenge his time entries. The Court does not find this rate to be exorbitant or uncustomary for an attorney litigating this type of case with the twenty-six years of experience possessed by counsel here.  For these reasons, the Court finds that the hourly rate used by Plaintiff's counsel of $250.00 is a reasonable rate.

Next, as stated above, Plaintiff seeks a fee award for 242.25 hours expended (225.24 hours through the jury verdict plus the 17 hours expended supporting and defending post-trial motions).  To support this request, counsel has provided the Court with itemized charts detailing the date, a brief description of the activity performed, the amount of time expended, and an hourly rate for his services and expenses.  (Fee Chart at 10-11).  In analyzing the number of hours worked, this Court has considered that this civil action involved six trial days, one pretrial conference, court-ordered mediation, and discovery which included at least six depositions. Despite the assertion of nine claims, the parties engaged in only a moderate amount of motions practice.  The record reveals that prior to trial, only seven motions in limine were filed (all by Defendants) and neither party sought a dispositive motion ruling.  The judicious nature of the motions practice is likely due to the fact that the claims asserted in this case were not unduly complex, were wholly dependent on witness credibility and did not involve novel or innovative legal theories. The Court has also given consideration to the fact that this case did not require counsel to have a specialized skill.  The record in this matter does not reveal any unwarranted time constraints placed on counsel by Plaintiff or the general circumstances of the case.  Further, there is no evidence that the length and relationship between counsel and client had any impact on the reasonableness of the hours expended.

Additionally, the Court has considered the parties' varied opinions relative to the undesirability of this case within the legal community. The Court is not persuaded by either party's assertions. This case involved civil rights violations and generally common state law claims. If there is a factor that would contribute to the "undesirability" of the case, it would be related to the status of the Defendants. Both Defendants were high-ranking officers in the Summers County Sheriff Department. However, the Court is not convinced that the alleged facts of this case would have caused members of the legal community great trepidation to litigate against these officers.

Moreover, the Court has reviewed Plaintiff's fee chart with an eye towards excessiveness and redundancy and finds that the time and labor expended by counsel was reasonable given the claims asserted in this case. The Court also finds it beyond dispute that the time counsel expended litigating this case was time that counsel could have spent pressing other legal matters or obtaining new clients. The Court has also considered the Plaintiff's contingency fee arrangement and finds that it is not extraordinary in a manner that would warrant a fee reduction.

Upon consideration of the amount in controversy in this case, counsel's expectation of the litigation, and the results obtained by Plaintiff, this Court has, to a lesser extent, considered the settlement demands and offers made by the parties, as reflected in their written submissions. *See Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011) (holding that a district court does not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award) (citing *Lohman v. Duryea Borough*, 574 F.3d 167, 167 (3d Cir. 2009) (finding that Federal Rule of Evidence 408 does not bar a court's consideration of settlement negotiations in its analysis of what constitutes a reasonable fee award in a particular case despite not complying with Rule 68.) As this Court explained prior to ordering mediation in this case, trial litigation

has its own risks for both parties. It was this Court's view that credibility of the witnesses would factor heavily into either party's success or failure. (*See* Defs.' Mem. at 11) (acknowledging that "this case certainly presented the opportunity for a large verdict" given the credibility issues that affected each side). The Court appreciates that the parties continued to view the value of Plaintiff's case through vastly different lenses prior to trial and that these views likely prevented a successful mediation. Plaintiff's successful jury verdict ($13,000) yielded far less than her demand ($100,000) and almost less than half the amount of Defendants' settlement offer ($25,000).

Although the Court has found Plaintiff to be a prevailing party, this designation does not mean that she is entitled to the entirety of the lodestar amount. The Supreme Court has instructed district courts only to award that which is reasonable. To this end, the Supreme Court has recognized that, "the most critical factor" in a court's determination of a reasonable fee award "is the degree of success obtained." (*Hensley*, 461 U.S. at 436.) In this regard, the Court finds that the requested fee award should be reduced. In making this equitable determination, the Court has focused on the crucial factor of the comparison between the scope of the litigation in this case and the relief obtained. Plaintiff has undeniably been vindicated for the treatment to which she was subjected in her workplace, a law enforcement workplace in which she was the only female employee. She has brought attention to the unlawful actions taken within this law enforcement office and the improper management of its members. To assist in creating a workplace free of the hostility and abusive environment found in this case is, without question, very significant. However, the Court must consider the extent of the asserted claims, their relatedness and the results achieved. Plaintiff and her husband asserted nine causes of action between the two Defendants, five of which involved civil rights violations. In consideration of

the totality of this litigation, the Court finds that three of the civil rights claims (relative to the hostile and abusive environment / sexual harassment) and the state law claims of battery, IIED and loss of consortium involved a common core of facts and related legal theories. None of these claims can be said to have been frivolous or asserted in bad faith. Although the Court, in its consideration of the allegations and the evidence presented at trial in this case, finds that these claims were interrelated, the same cannot be said for the alleged freedom of association violation or the gender discrimination (equal pay) claim. Despite the relatedness of the sexual harassment claim against him, the jury failed to find Defendant Dolphin liable for the alleged freedom of association claim, equal pay claim or the sexual harassment (abusive / hostile work environment) claim. Additionally, the Defendants were not found liable for the asserted IIED or loss of consortium claims. Plaintiff was vindicated by a major portion of her case involving the hostile and abusive work environment claim. She achieved success on the battery claim, the basis of which became a key piece of evidence about Defendant Chellis's actions toward her and the environment in which she worked. The Court cannot consider the full thrust of this case and credibly find, as Defendants suggest, that Plaintiff's success in this case was minor. To the extent Defendants ask this Court to compare the total number of issues / claims in this case to the number on which Plaintiff prevailed to arrive at a reasonable number of hours expended, by calculating a proportioned reduction, such an argument is misplaced as it has been rejected by the Supreme Court in *Hensley*, 461 U.S. at 435, n.11. However, the Court is not convinced that Plaintiff has achieved a level of success that makes the entire number of hours expended an equitable basis for a reasonable fee award. Upon consideration of the unsuccessful, unrelated claims (first amendment and equal pay claims), the Court finds the requested fee award should be reduced by twenty percent. Consequently, the Court finds that Plaintiff is entitled to a

reasonable attorney's fee award of $48,450.00. Defendants do not challenge the requested amount of legal expenses. Therefore, Plaintiff is entitled to $5,979.99 in litigation expenses.

In arriving at its conclusion, this Court has considered the nature of the claims and the evidence presented in support, the *Grissom* factors in determining the reasonableness of counsel's hourly rate as well as the reasonableness of the hours expended, and has also considered the parties' pre-trial negotiations, the degree of Plaintiff's success and the relationship of the claims. Further the Court has considered the jury's verdict in this case and the attorney's fee award, not in terms of proportionality, but in consideration of the vindication of an important civil rights violation. With respect to the noted reduction above, the Court finds that the attorney's fee award is reasonable and fair and will not put a chilling effect on attorneys' decisions to accept and litigate cases involving the vindication of civil rights like those asserted in this case.

After careful consideration of the foregoing, the Court does hereby **ORDER** that *Plaintiff's Motion for Attorney's Fees and Expenses of Litigation* (Document 118) be **GRANTED IN PART**. The Court **ORDERS** that Plaintiff be awarded the reasonable attorney fee of $48,450.00 and legal expenses in the amount of $5,979.99.

Further, the Court **ORDERS** that Defendants' Joint Response to Amended Plaintiff's Objection to the Defendants' Sur Response, Docket Entry 129 and Defendants' Joint Motion to Modify Time Period to the Reply (Document 133) be **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 22, 2013

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA